IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-00031-MSK-BNB

RITA NOVEY,

      Plaintiff,

v.

HEARTLAND HOME FINANCE, INC.,

      Defendant.

---

## ORDER DENYING MOTION UNDER FED. R. CIV. P. 59

---

THIS MATTER comes before the Court on the Plaintiff's Motion to Amend Judgment or Grant New Trial **(#100)** filed pursuant to Fed. R. Civ. P. 59, to which the Defendant responded **(#103)** and the Plaintiff replied **(#106).** Having considered the same, the Court

**FINDS** and **CONCLUDES** that:

### I. Background

The Plaintiff, Rita Novey, commenced this action in January 2006 against Defendant Heartland Home Finance, Inc. ("Heartland"). In her original and amended complaints **(#1, #6),** she asserted the following claims: (1) wrongful discharge in violation of public policy premised upon violation of the Colorado Anti-Discrimination Act, § 24-34-402, *et seq.* (in other words, age discrimination); (2) wrongful discharge in violation of public policy premised upon Ms. Novey's refusal to violate federal and state law;[1] and (3) outrageous conduct. She later filed a second

---

[1] She identified no particular laws on which her claim was based.

amended complaint (**#24**). In it, she asserted the same three claims but added a fourth claim of age discrimination.

Shortly before Ms. Novey filed her second amended complaint, the Court issued a Pre-Trial Preparation and Trial Setting Order (**#20**). The Court set a 5-day jury trial and final pretrial conference, and prescribed the required format for the final pretrial order and the witness and exhibit lists.

Before the final pretrial conference, the parties submitted a proposed final pretrial order which did not comply with the Pre-Trial Preparation and Trial Setting Order in that it failed to identify the facts which would support the elements of their claims and defenses. Consequently, the parties were required to prepare and submit a revised final pretrial order. In addition, the witness list estimated 31 hours of testimony, which exceeded the time allotted for trial.

Subsequently, Ms. Novey voluntarily dismissed her outrageous conduct claim. The parties also submitted a revised final pretrial order, which the Court issued (**#62**). In it, Ms. Novey identified her claims as follows: (1) wrongful discharge in violation of public policy for age discrimination, retaliation, and hostile work environment; (2) wrongful discharge in violation of public policy for refusal to commit illegal acts; and (3) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").[2]

The Court later vacated (**#74**) the trial date for circumstances beyond the Court's control and set a law and motion hearing for purposes of resetting the trial. At that hearing, the Court

_____

[2] Throughout this action, Ms. Novey continued to pursue her claim of wrongful discharge in violation of public policy premised upon the Colorado Anti-Discrimination Act, but Colorado courts have expressly disavowed such a claim due to the "comprehensive remedial remedy" provided by the Colorado Anti-Discrimination Act. *See, e.g., Ferris v. Bakery, Confectionery and Tobacco Union,* 867 P.2d 38, 45 (Colo. App. 1993).

and the parties discussed possible trial dates.  The parties agreed that the matter could be tried in 4 days, and the trial was reset.

The trial occurred October 9 through 12, 2007.  Based upon the evidence presented at trial, as well as the statement of claims in the final pretrial order, there were three discernible claims: (1) age discrimination; (2) wrongful discharge in violation of public policy based upon Ms. Novey's refusal to commit illegal acts; and (3) retaliation for Ms. Novey's complaints of disparate treatment.  The jury was instructed as to these claims and found in favor of Heartland on all claims.  Judgment entered in favor of Heartland.

## II. Issue Presented

Post-trial, Ms. Novey asks the Court to either enter judgment in her favor, or to grant her a new trial, on her age discrimination claim.[3]  She contends that the verdict was not supported by the evidence, an incomplete pretext instruction was given, and that the trial was conducted in a manner prejudicial to her.  Heartland opposes Ms. Novey's motion

## III.  Analysis

### A.  Weight of the Evidence[4]

Ms. Novey contends that the verdict on her age discrimination claim was against the weight of the evidence.  Heartland disagrees.

Under Rule 59(a), a court may grant a new trial on all or some of the issues "for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  A

---

[3] Apparently, Ms. Novey does not challenge the outcome on her other claims.

[4] Ordinarily, the Court would address this issue last.  However, the Court addresses this issue first because none of Ms. Novey's challenges concern evidence that was excluded, nor does she identify any evidence she was otherwise prevented from presenting.

motion under Rule 59(a) can be premised upon the argument that the verdict is against the weight of the evidence. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1284 (10th Cir. 1999). A court must not disturb the verdict "unless it is clearly, decidedly, or overwhelmingly against the weight of the evidence." *Id.* (citations and quotations omitted). In reviewing the verdict, a court must consider the record in the light most favorable to the prevailing party. *Id.*

To prove her claim of age discrimination, Ms. Novey was required to prove that Heartland terminated her employment because of her age. At trial, Joshua Nielsen-Mayer of Heartland testified that he terminated Ms. Novey's employment due to her negative attitude and gossiping in the Heartland office.

Ms. Novey contended that Mr. Nielsen-Mayer's proffered justification was pretextual and was being used to cover up a discriminatory motive. However, Ms. Novey offered no evidence that her attitude was not negative, nor that she did not gossip. Indeed, it was unrebutted that Ms. Novey frequently gossiped at Heartland's Aurora office. All of the witnesses who worked with Ms. Novey at the Aurora office testified either about Ms. Novey's negative attitude, or that Ms. Novey gossiped at the office, often about the personal business of other employees and how it angered the other employees.[5]

To establish that Mr. Nielsen-Mayer's stated reason was pretextual, Ms. Novey instead relied upon the following evidence: (1) the fact that Mr. Nielsen-Mayer, who was younger than

---

[5] Ann Chapman, who was Ms. Novey's friend, testified that Ms. Novey talked a lot with her about the personal business of other employees, and that this caused the employees to complain about Ms. Novey. Edward Benko, who worked as an assistant vice president at the Aurora office, testified that he warned Ms. Novey about her gossiping, that she did not do her job very well, and that her negative points outweighed her positive points. Eric Zelt testified that Ms. Novey was "chatty." Mr. Nielsen-Mayer testified that Ms. Novey gossiped three hours per day. Brandi Stang, who occupied the same job as Ms. Novey, testified that Ms. Novey always had a negative attitude.

Ms. Novey, had lunch and otherwise socialized with younger employees; (2) the statement made by Mr. Nielsen-Mayer's supervisor, Eric Meyer, about his wish to hire younger employees to staff the new Heartland office; and (3) that Ms. Novey was fired by Mr. Nielsen-Mayer the Friday before the office was scheduled to move to two new locations, approximately one month after Mr. Meyer made his statement.

Construing the evidence in the light most favorable to Heartland, the verdict was not clearly, decidedly, or overwhelmingly against the weight of the evidence. There was little (and arguably no) evidence that Mr. Nielsen-Mayer had any discriminatory motive for terminating Ms. Novey's employment. As for Mr. Nielsen-Mayer's socializations with other young employees, the jury could rationally treat them as harmless and nondiscriminatory. Indeed, if a discriminatory inference could be drawn from these social interactions, then a discriminatory animus might be deemed to exist in virtually every workplace in which younger people socialized together.

Arguably, a jury could have inferred discriminatory intent from the statement made by Mr. Meyer, and could have imputed such intent to Mr. Nielsen-Mayer.[6] However, the jury chose not to draw this inference, perhaps because of the evidence of gossiping, or perhaps because Mr. Meyer did not state any desire to fire existing employees in order to attain the objective of hiring younger employees.[7] Because the Heartland Aurora office was splitting into two new offices, the jury could only speculate as to whether Heartland intended to expand its workforce, or whether

---

[6] Such inference would have been a stretch. Oddly, although Ms. Novey characterized the statement by Mr. Meyer as being part of a conversation, Eric Zelt testified that Mr. Nielsen-Mayer did not say anything and that Mr. Zelt could not see Mr. Nielsen-Mayer when he heard Mr. Meyer talking. Thus, there was not even any evidence that Mr. Nielsen-Mayer heard the statement by Mr. Meyer, or that he acquiesced in Mr. Meyer's statement.

[7] Neither party called Mr. Meyer to testify during the trial to explain what he meant.

the hiring of new employees necessitated the firing of existing employees. Thus, the verdict was not against the weight of the evidence.

## B. Pretext Instruction

Ms. Novey contends that the Court erred in failing to give her third and fourth tendered instructions with regard to "pretext". Heartland argues that the tendered instructions were redundant, the other instructions correctly stated the law, and the proffered instructions pertained to the *McDonnell Douglas*[8] shifting burden framework which is not applicable at trial.

Pursuant to Rule 59(a), a court may order a new trial when it erroneously instructed the jury or refused to give an instruction it was required to give. *See Allen v. Wal-Mart Stores, Inc.,* 241 F.3d 1293, 1298 (10th Cir. 2001). Under Rule 59(e), a court can alternatively amend the judgment on one of three grounds: (1) an intervening change in controlling law, (2) new evidence which was previously unavailable, or (3) the need to correct clear error or prevent manifest injustice. *See Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000). Here, Ms. Novey's motion appears to be based upon the third category. In considering whether there was clear error or manifest injustice, a court may reconsider its prior ruling if it has misapprehended the facts or a party's position, but it is not appropriate to revisit issues that have already been addressed or for a party to advance arguments that could have been raised previously. *Id.*

In her third tendered instruction, Ms. Novey asked that the jury be instructed that: "In determining whether the Defendant's stated reasons for the decision are genuine or pretextual, you must examine the facts as they appeared to the person making the employment decision (Mr.

---

[8] *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

6

Joshua Nielsen-Mayer) at the time the decision was made." Heartland objected to the giving of this or any pretext instruction on the basis that there was no evidence to support it. In her fourth tendered instruction, she asked that the jury be instructed that: "If you do not believe the reason the Defendant Heartland has offered for Plaintiff's termination then you may, but are not required to, presume that the employer was motivated by age discrimination." Heartland also objected to this latter instruction on the basis that it was duplicative of earlier instructions. Neither instruction was given, in toto, to the jury.[9]

Ms. Novey contends that failure to give these two instructions was contrary to the Tenth Circuit's opinion in *Townsend v. Lumbermens Mut. Cas. Co.,* 294 F.3d 1232 (10th Cir. 2002) (Judge Broby dissenting). In *Townsend*, the Tenth Circuit considered a circumstance in which the district court gave no pretext instruction. Relying on several cases which applied the *McDonnell Douglas* burden shifting framework, the Tenth Circuit held that although a court is not always required to give a pretext instruction, it must give such an instruction when a rational factfinder could reasonably find that the defendant's explanation was false and could also infer from the falsity that the defendant is hiding a discriminatory purpose. *Id.* at 1241. It stated: "[W]e hold that in cases such as this, a trial court must instruct jurors that if they disbelieve an employer's proffered explanation they may – but need not – infer that the employer's true motive was discriminatory."[10] *Id.*

The decision in *Townsend* has not been expressly overruled, but in subsequent cases, the

---

[9] A portion of Ms. Novey's third tendered instruction became Concluding Instruction No. 16, which is discussed *infra*.

[10] The Court refers to this, *infra*, as a *Townsend* instruction.

Tenth Circuit has suggested that giving the *Townsend* instruction is improper to the extent that it requires burden shifting under *McDonnell Douglas*. The shifting-burden analysis of *McDonnell Douglas* drops out at trial, and the burden of proving discriminatory intent remains at all times with the plaintiff. *See Whittington v. Nordam Group Inc.,* 429 F.3d 986, 997-98 (10th Cir. 2005). For this reason, a court should not instruct a jury on the intricacies of the *McDonnell Douglas* framework. *Id.* at 993, 997-98 (disapproving use of an instruction which included the *Townsend* instruction, post-*Townsend*). "Because the employer will present evidence of a proper motive in almost every case, the ultimate question for the jury simply becomes 'which party's explanation of the employer's motivation it believes.'" *Id.* at 993.

Here, Ms. Novey did not request the precise language authorized in *Townsend* that the jury "may – but need not – infer that [Heartland's] true motive was discriminatory." Instead, she requested the following language: "In determining whether the Defendant's stated reasons for the decision are genuine or pretextual, you must examine the facts as they appeared to the person making the employment decision (Mr. Joshua Nielsen-Mayer) at the time the decision was made." *Townsend* requires no such instruction.

Ms. Novey also requested the following language: "If you do not believe the reason the Defendant Heartland has offered for Plaintiff's termination then you may, but are not required to, **presume** that the employer was motivated by age discrimination." This is similar to that described in *Townsend,* but differs in a key respect. It created a presumption, rather than allowing the jury to draw an inference. Although a presumption involves the making of an inference, it is a legal construction which "shifts the burden of production or persuasion to the opposing party[.]"

Black's Law Dictionary (8th ed. 2004).[11]  The language proposed by Ms. Novey in her fourth

tendered instruction was legally incorrect because the burden of proof remained at all times with

Ms. Novey.

At Ms. Novey's request, the jury was given a pretext instruction (Concluding Instruction

No. 16),[12] which stated:

> Heartland claims that it had legitimate reasons for
> terminating Ms. Novey's employment.  If you find that Ms.
> Novey's termination was for a legal, non-discriminatory business
> reason, even if you do not agree with Heartland that the reason
> justifies termination, you must find for Heartland.  Ms. Novey, on
> the other hand, claims that Heartland's asserted reasons are a mere
> pretext to cover up a discriminatory motive.
>
> Ms. Novey may show that Heartland's stated reasons for its
> decisions are pretextual in several ways:
>
> 1.  Evidence that the stated reasons for the decisions
>     are false;
> 2.  Evidence that Heartland acted contrary to a written
>     company policy prescribing the action to be taken by
>     Heartland under the circumstances; or
> 3.  Evidence that Heartland acted contrary to an
>     unwritten policy or contrary to established company
>     practice when it terminated Ms. Novey's
>     employment.

This pretext instruction immediately followed two other instructions (Concluding

Instruction Nos. 14 & 15) which described the elements of Ms. Novey's claim.  Concluding

Instruction No. 14 stated:

> For Ms. Novey to establish her claim of age discrimination,

---

[11] Ms. Novey's request for an instruction on a presumption is demonstrative of the imprecision which plagued this case throughout the trial.

[12] The language in this instruction was contained in Ms. Novey's third tendered instruction.

she must prove, by a preponderance of the evidence, all three of the
following elements:

> 1. Heartland terminated Ms. Novey's employment.
> 2. At the time Heartland terminated her
> employment, Ms. Novey was over the age of 40.
> 3. Ms. Novey's age was a motivating factor in
> Heartland's decision to terminate her employment.

> The parties have stipulated to elements 1 and 2, and you
> must accept these elements as established.

Concluding Instruction No. 15 elaborated on element 3 as stated in Concluding Instruction

No. 14:

> Age was a "motivating factor" if Heartland's decision to
> discharge Ms. Novey from her employment was based upon Ms.
> Novey's age. Ms. Novey is not required to prove that her age was
> the sole or primary motivation for Heartland's decision. Rather,
> age is a motivating factor if, but for Ms. Novey's age, Heartland
> would not have terminated her employment.
> Ms. Novey may prove Heartland's discriminatory intent
> either directly or indirectly by offering evidence of remarks that are:
> (1) age-related, (2) made closely in time to the termination of her
> employment, (3) made by an individual with authority over the
> decision to terminate her employment, and (4) related to the
> decision to terminate her employment.

The jury also was instructed as to its fact-finding role. In Concluding Instruction No. 5,

the jury was instructed that:

> You should consider only the evidence in this case, but you are
> permitted to draw such reasonable inferences from the testimony
> and exhibits as you feel are justified in the light of your experience.
> In other words, you should use your reason and common sense to
> make deductions and reach conclusions as to the facts.

In Concluding Instruction No. 8, the jury was also instructed that:

> If a witness has testified falsely concerning any material matter, you
> may distrust such witness' testimony in other particulars, reject it

altogether, or give it such weight as you may think it deserves.

Viewing these instructions as a whole, it was abundantly clear that the jury could infer that Ms. Novey's age was a motivating factor for her termination if it found that the reason given by Mr. Nielsen-Mayer for terminating her employment was not the real reason. If the jury disbelieved Mr. Nielsen-Mayer, it would have understood that it could disregard all of his testimony, that it could draw reasonable inferences from any testimony it deemed to be false, and that it could view his false testimony as evidence of pretext to cover up a discriminatory motive. Thus, a *Townsend* instruction would have been redundant. The only thing that a *Townsend* instruction would have added is a reference to a particular inference that could be drawn from specific evidence, and would have highlighted such evidence as compared to other evidence in the case. As a consequence, the Court concludes that its rulings on Ms. Novey's proffered pretext instructions were neither clearly erroneous nor manifestly unjust.

## C. Manner of Trial

Ms. Novey also contends that the manner in which the trial was conducted was unfairly prejudicial and requires either a new trial or amendment of the judgment. She takes particular issue with several events which occurred during the trial: (1) the allotment of time for presentation of evidence and argument; (2) the rulings with regard to a conversation overheard by Eric Zelt; and (3) the interruption of her closing argument. Heartland responds that the rulings made during the court of the trial were legally correct, and that none of these events were unfairly prejudicial.

A motion for a new trial under Rule 59(a) can be premised upon the argument that a court made a clearly erroneous and prejudicial ruling during trial. *See Gust v. Jones,* 162 F.3d 587, 591

(10th Cir. 1998). Where a court errs, but the errors themselves are each harmless, the cumulative impact of the errors may also require a new trial if they are collectively harmful. *See McCue v. State of Kan., Dept. of Human Resources,* 165 F.3d 784, 791 (10th Cir. 1999). In addition, clear error or manifest injustice can be a basis for amendment of the judgment under Rule 59(e).

### 1. Allotment of Time

Ms. Novey argues that the Court's imposition of time limits for each side's presentation of evidence was arbitrary and prejudicial. She complains that the time-limitation was unnecessary and resulted in her inability to call rebuttal witnesses. She also asserts that there was trial time available to allow her to call rebuttal witnesses, even though her allotted time had expired.

Heartland responds that it was within the Court's discretion to control the presentation of evidence. Heartland also asserts that Ms. Novey cannot challenge rulings with regard to any limitation on her ability to present rebuttal witnesses, because she made no offer of proof as required by Fed. R. Evid. 103(a).

The Tenth Circuit has stated that "[t]he district court has broad discretion in its control and management of trials." *Cleveland By and Through Cleveland v. Piper Aircraft Corp.,* 985 F.2d 1438, 1449 (10th Cir. 1993). Thus, it is within the purview of the Court to allot trial time between the parties. *See Glenn v. Cessna Aircraft Co.,* 32 F.3d 1462, 1464 (10th Cir. 1994). The only limitation is that any such allotment "must be balanced with constitutional fairness so as not to prejudice the basic rights of the parties." *Piper Aircraft Corp.*, 985 F.2d at 1449. Absent manifest injustice, a court may properly limit the presentation of evidence. *See Strickland Tower Maintenance, Inc. v. AT & T Communications, Inc.,* 128 F.3d 1422, 1430 (10th Cir. 1997).

Five months before the trial, there was a final pretrial conference. At that conference, the Court noted that the parties had scheduled the trial for 5-days. The Court explained that the trial would begin on Monday afternoon, as are most jury trials in this courtroom, and that due to the scheduling of another trial the following week, it necessarily would be concluded and submitted to the jury by close of business on Friday. Excepting approximately 6 hours collectively for jury selection, opening statement (15 minutes per party), charging conference, and closing arguments (30 minutes per party), the Court explained that this left 20-21 hours for presentation of evidence, and that the time would be equally divided between the parties, to be measured by a chess clock maintained by the Courtroom Deputy. Counsel could confer with the Courtroom Deputy at any time to determine what time had been consumed or was left. Neither party objected to the amount of time for trial or to the Courtroom Deputy's use of the chess clock to measure the time used by each side.

Later, the parties stipulated that only four days were required for trial. As a consequence, the trial began on Tuesday morning. Equal allocation of evidence presentation time according to the above formula allowed each party 8 hours to present its case.

During the afternoon of the third trial day, Ms. Novey exhausted her 8 hours while presenting a videotaped cross-examination of defense witness, Ann Chapman.[13] At the bench, Ms. Novey was advised that her time had expired. Counsel asked to continue the cross-examination, which request was granted with the advisement that if all trial time was otherwise consumed, the excess time would be offset against the time allotted for closing argument. Some 40 minutes

---

[13] The Court notes that the second day of trial was recessed 45 minutes early at Ms. Novey's request because her attorney was unable to proceed due to emotional upset related to the unexpected death of a family friend.

later, Ms. Novey stopped the videotaped cross-examination.

At the end of the day, counsel were reminded that the evidentiary presentation would be concluded and the case submitted to the jury on Friday because another jury trial was scheduled to commence the following Monday. Ms. Novey complained that she still had more evidence to present. The Court offered Ms. Novey the opportunity to proffer any additional evidence that was necessary to avoid clear error or manifest injustice, but Ms. Novey specified none. Defense counsel consented to play the remainder of Ms. Chapman's videotaped cross-examination and have it count against defense time. The Court also allowed Ms. Novey to examine Mr. Zelt.

Only then, for the first time, did Ms. Novey object to the allotment of trial time. The next morning, she asked the Court to reconsider the parties' 8-hour time allotments. Heartland objected to a change in the rules at that juncture, because it had relied on the time allocation in presenting its case. Ms. Novey's motion for reconsideration was denied, but Ms. Novey was again offered the opportunity to make a proffer of evidence that was essential to avoid clear error or manifest injustice, and advised that she would be allowed to present such evidence. She made no proffer.

The Court and parties worked hard on the last day of trial. That morning, two witnesses testified. Because a third witness was unavailable to testify until the afternoon, the charging conference began shortly after 11:00 a.m. After a 25-minute interim recess (because counsel were not prepared to proceed) and a brief recess for lunch, the charging conference concluded at about 2:00 pm. Following further brief evidentiary presentation, the Court instructed the jury. Both parties presented closing arguments, and the case was submitted to the jury in the late afternoon. After submission, Ms. Novey asked that the jury be recalled and that she be given the opportunity

to present additional argument about future losses. Over the objection by Heartland, the Court allowed Ms. Novey to do so.

The parties agreed that the case could be tried in a 4-day period and understood that the trial time would be divided equally between the parties. Absent any timely objection, the Court finds that the original allotment was fair.

The parties were provided with the agreed amount of time. Ms. Novey was also given an additional 40 minutes for the videotaped cross-examination of Ann Chapman, the opportunity to present further cross-examination of Ann Chapman during Heartland's allotted time, the opportunity to examine Mr. Zelt and Mr. Salazar, the opportunity to make a proffer of other essential evidence, and three opportunities to present her closing argument. Given her agreement to the initial allocation of trial time and these accommodations, the Court cannot conclude that Ms. Novey's rights were prejudiced.

### 2. The Conversation Overheard by Eric Zelt

Eric Zelt, a Heartland employee, overheard a "conversation"[14] in which a second-level Heartland supervisor, Eric Meyer, told first-level supervisor Joshua Nielsen-Mayer about a desire to hire younger employees at the new Heartland office. This conversation was the subject of *in limine* and other evidentiary rulings, as well as Mr. Zelt's and Gary Salazar's testimony.

Ms. Novey complains that the Court's rulings with regard to this conversation were incorrect and unfairly prejudicial, in various respects. She takes specific issue with the rulings on Heartland's objections during opening statement and the direct examination of Mr. Zelt. She also

---

[14] Although the parties repeatedly referred to this as a conversation, there was no evidence that Mr. Nielsen-Mayer ever said anything.

believes that the Court "limited the impact" of Mr. Zelt's testimony because of its timing. Finally, she contends that the Court unfairly restricted her examination of her investigator, Gary Salazar. Heartland responds that the rulings pertaining to the conversation were proper, and that Ms. Novey was not prejudiced because Mr. Zelt and Mr. Salazar actually testified on the subject.[15]

On the first day of trial, and prior to *voir dire*, defense counsel asked for an order precluding Ms. Novey from making any reference during opening statement to this conversation. After hearing argument from both counsel, the preliminary ruling – subject to later reconsideration – was that the statement made by Mr. Zelt to Ms. Novey about the conversation he heard was inadmissible (due to multiple levels of hearsay), and counsel were not to refer to it during opening statements. When counsel were asked whether there was any need for further clarification or explanation, they responded, "No."

During his opening statement, counsel for Ms. Novey referred to the conversation – between Joshua Nielsen-Mayer and Eric Meyer – which Mr. Zelt had overheard. Defense counsel simultaneously objected and apologized for interrupting Ms. Novey's opening statement. Ms. Novey's counsel then expressed his understanding that the *in limine* ruling had pertained only to Mr. Zelt's statement, not to the underlying conversation. Because the ruling pertained to the entire conversation relayed by Mr. Zelt, Heartland's objection was sustained. Counsel made no further mention of the conversation during his opening statement.

---

[15] Heartland also contends that to the extent there was any limitation on Ms. Novey's examination of Mr. Zelt or Mr. Salazar, she has failed to preserve any objections because she made no offer of proof as required by Fed. R. Evid. 103(a). Heartland further asserts that limitation on Mr. Salazar's examination would have been an appropriate sanction under Fed. R. Civ. P. 37 due to Ms. Novey's failure to disclose him under Fed. R. Civ. P. 26(a)(1)(A) and failure to disclose audiotapes of Mr. Salazar's conversation with Mr. Zelt. The Court does not reach these alternative arguments.

The exchange that occurred during Ms. Novey's opening statement was ordinary and part of the typical trial process. There was nothing prejudicial to Ms. Novey in this exchange – quite to the contrary, defense counsel was apologetic for making the objection, and Ms. Novey's counsel was able to explain his misunderstanding of the *in limine* ruling in full view of the jury.

In addition, before the attorneys made their opening statements, the jury heard and received a written copy of a series of instructions so that they could consider them during their deliberations. In Initial Instruction 4, the jury was advised that:

> There are certain things that are **not evidence,** and you may not consider these things in determining the facts.
> (1) Statements, arguments, questions or objections by the attorneys **are not evidence.** Lawyers have an obligation to make statements and arguments, to ask questions and to object to evidence that they believe is improper under the rules of evidence– in other words, out of bounds. Do not be influenced by any evidentiary objection, my ruling on it or the frequency of objections made by any attorney. If the objection is sustained, you should ignore the answer to the question; if I overrule the objection, treat the answer like any other. . . .

The Court presumes that the jury followed this instruction and was not influenced by defense counsel's objection, or the ruling on that objection, in reaching its verdict.

On the second day of trial, Ms. Novey called Eric Zelt to testify. She began to ask Mr. Zelt about a conversation he overheard in December 2003, and Heartland objected on two grounds: (1) that the question was leading; and (2) that the substance of the answer would be prohibited by the earlier *in limine* ruling. Heartland's objection was sustained on the grounds that the question was leading. The Court then asked Ms. Novey whether the question concerned the substance of the prior ruling. Ms. Novey's counsel responded, "I don't know what prior ruling you're talking about." At that juncture, the Court recessed for the noon hour to take the matter

17

up outside the jury's presence.

After excusing the jury, the Court asked for a proffer of the evidence that Ms. Novey intended to elicit. Ms. Novey proffered that Mr. Zelt would testify as follows: In the late part of December 2003, he heard Mr. Nielsen-Mayer and Mr. Meyer, both in a management position with Heartland, conversing that they wanted to hire in younger people for the new office in January.[16] Heartland objected, and stated that the remark Mr. Zelt heard was a stray remark made by Mr. Meyer, and Mr. Zelt would not be able to testify that Mr. Nielsen-Mayer said anything or endorsed Mr. Meyer's remark. Heartland argued that the statement by Mr. Meyer was inadmissible under *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132 (10th Cir. 2000), because it was not connected to a disciplinary decision.

There was no immediate ruling on the objection. Instead, outside the presence of the jury, Ms. Novey examined Mr. Zelt to show what he would testify. During the testimonial proffer, Ms. Novey asked Mr. Zelt what he overheard. Mr. Zelt testified: "I heard Mr. Meyer make a comment that when we moved to the new office that he wanted to hire young people to staff his office and by that I mean he was I believe referring . . . he wanted to bring in to my understanding college-age loan officers who had not had a lot of experience in the workplace." He further testified: "I heard him say that he wanted to bring in new people to staff his new office – or younger people to staff his new office."

Before a ruling on Heartland's objection to the admissibility of this testimony, Ms. Novey's counsel stated that he thought that Mr. Meyer participated in the decision to terminate Ms. Novey's employment. The Court invited him to make such a proffer, but he was unable to

---

[16] The substance of this proffer is <u>not</u> what Mr. Zelt ultimately testified.

18

locate the information in his materials which he needed to make his proffer.

The Court then sustained Heartland's objection and ruled that the proffered testimony from Mr. Zelt was inadmissible for a variety of reasons. First, pursuant to *Jaramillo v. Colorado Judicial Dept.,* 427 F.3d 1303 (10th Cir. 2005), the statement by Mr. Meyer was inadmissible under Fed. R. Evid. 801(d)(2)(D), because there was no evidence or proffer that Mr. Meyer was involved in the decision to terminate Ms. Novey's employment. Second, pursuant to *Jones v. Unisys Corp.*, 54 F.3d 624 (10th Cir. 1995) and *Cone v. Longmont United Hosp. Assn.,* 14 F.3d 526 (10th Cir. 1994), and assuming that Mr. Meyer was involved in the decision to terminate Ms. Novey's employment, the statement was excluded under Fed. R. Evid. 403 because it was an isolated and ambiguous stray remark, there was no showing of any nexus between the remark and Ms. Novey's termination, and the remark was unduly prejudicial to Heartland.

On the third day of trial, Mr. Nielsen-Mayer testified that after he decided to terminate Ms. Novey's employment, but before he informed her of the decision, he informed Mr. Meyer of his decision. However, his deposition testimony was to the contrary. There he stated that "we spoke" with Mr. Meyer, who was his supervisor, and "we determined that we were going to terminate Rita's employment." Based upon the inconsistency, the Court granted Ms. Novey's motion for reconsideration, and authorized her to recall Mr. Zelt. Her counsel commented that he could telephone Mr. Zelt to testify that day (third day of trial) but that he preferred to recall Mr. Zelt the following day (fourth day of trial).

On the fourth trial day, it was Heartland which called Mr. Zelt to testify. On direct examination, Heartland asked Mr. Zelt whether he overheard a conversation in which Mr. Nielsen-Mayer told Mr. Meyer that he wanted to hire younger employees. Mr. Zelt responded

that it was Mr. Meyer – not Mr. Nielsen-Mayer – who had made that statement, and that the conversation occurred in November or December 2003. Mr. Zelt also testified that he did not hear Mr. Nielsen-Mayer say anything during that conversation.

Ms. Novey contended that Mr. Zelt's testimony was contrary to a prior statement he had made, and she wanted to impeach his testimony. The Court then considered whether and how Ms. Novey could elicit testimony from Mr. Zelt regarding a prior inconsistent statement. Because the prior statement was not under oath, it did not fall within the purview of Fed. R. Evid. 801(d)(1)(A). The Court then applied Fed. R. Evid. 613(b), which states: "Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 801(d)(2)." Under this rule, the only question which could be asked of Mr. Zelt on cross-examination was whether he gave a different, inconsistent statement to Ms. Novey's investigator. Ms. Novey expressly agreed with this ruling.

Ms. Novey's counsel then asked Mr. Zelt on cross-examination, "Have you ever identified the speaker who made the statement of hiring younger employees as being Mr. Joshua Nielsen-Mayer?" Mr. Zelt responded, "Not to my knowledge, no." Ms. Novey then asked, "To anyone?" Mr. Zelt responded, "Not that I recall, no."

Thus, the testimony which Ms. Novey anticipated Mr. Zelt would give was not, in fact,

the testimony he gave.[17]  The testimony was of "limited impact" not because of its manner or timing, but because it did not show what Ms. Novey thought it would.  Thus, there was nothing clearly erroneous nor manifestly unjust with regard to the manner or timing of Mr. Zelt's testimony.

Ms. Novey then desired to call Mr. Salazar to impeach Mr. Zelt, because she believed that Mr. Zelt had told Mr. Salazar that it was Mr. Nielsen-Mayer, not Mr. Meyer, who made the statement regarding the hiring of younger employees.  Over Heartland's objections and claims of unfair surprise, the Court allowed Ms. Novey to examine Mr. Salazar.  During the examination, Ms. Novey asked Mr. Salazar: "Did Mr. Zelt tell you that Mr. Meyer said that he wanted to hire younger employees at the new office?"  Mr. Salazar answered: "Yes, he did.  He told me that he did recall the conversation.  I actually asked him a question if he recalled saying to Ms. Novey that . . ."  Counsel for the parties interrupted, and the Court allowed Mr. Salazar to finish his answer.  The question was read back, and he answered: "Yes."  Thus, the answer, again, was not what Ms. Novey had anticipated.

In short, Ms. Novey's impeachment attempt failed.  This was not due to any limitation of her examination of Mr. Salazar, but was instead due to the fact that Mr. Salazar did not answer her question the way she thought he would.  Ms. Novey does not identify any other question which she would have liked to ask Mr. Salazar or how any further examination would have elicited other or different information.  As a consequence, she has not shown that the Court clearly erred in the manner in which it handled Ms. Novey's examination of Mr. Salazar, nor that

---

[17] Indeed, Mr. Zelt's testimony did not even remotely resemble what Ms. Novey represented it would be. She proffered that Mr. Zelt would testify that Mr. Nielsen-Mayer and Mr. Meyer "discussed getting rid of the older workers and hiring younger employees as replacements."

it resulted in manifest injustice.

### 3. Closing Argument

Ms. Novey contends that her counsel's image was damaged when the Court sustained an objection of opposing counsel during her closing argument. Heartland responds that the jury was not left with any ill impression of Ms. Novey's counsel, and in any event would not have based its verdict on any such impression in light of admonitions given to the jury.

During closing argument, counsel for Ms. Novey began instructing the jury on the concept of "front pay", the equitable remedy that accounts for future lost wages. Heartland objected on the basis that the issue of front pay was not being given to the jury. Because front pay was not an issue for the jury, the objection was sustained and Ms. Novey's attorney was directed to "please move on." Ms. Novey's counsel then began to argue about the loss of future earnings, to which Heartland again objected. The objection was sustained, and Ms. Novey's counsel was directed to "move on."

After the case was submitted to the jury, and the jury left for its deliberation, Ms. Novey objected to the ruling made during her closing argument. She acknowledged improperly referring to loss of future wages as "front pay," but contended that she was entitled to request an award of future economic losses. She contended that the instruction to "move on" implied to the jury that her counsel was doing something improper, and counsel personally resented the implication. She requested that she be allowed to make further closing argument to the jury.

Ms. Novey's request was granted; the jury was called back into the courtroom and instructed that Ms. Novey's reference "to future loss of pay is appropriate". Ms Novey's counsel then argued for an award of future lost wages. The jury then returned to its deliberations.

There is no argument that the Court erred in prohibiting Ms. Novey from arguing "front pay" to the jury, only that Ms. Novey's request to argue about future economic losses with regard to her wrongful discharge in violation of public policy claim was cut short creating an adverse impression of Ms. Novey's counsel. However, after Ms. Novey clarified that her counsel had misspoken and intended to argue entitlement to future damages on the state law claim, further argument ensued. Thus, to the extent there was any improper limitation on Ms. Novey's closing argument, it was cured through the supplementation.

### 4. Cumulative Error

Ms. Novey further complains that the manner in which all of the above events transpired was prejudicial to her, because it made it appear as though her attorney had acted unethically. She believes that the jury was influenced by such a perception. Heartland contends that there were no errors, and that the jury based its verdict on the evidence.

As discussed *supra*, the jury was instructed that it was not to consider arguments of counsel, objections, or the rulings on them as evidence in the case. There is no indication that the jury did not follow the instructions it was given, and the Court must presume that the jury followed all instructions and based its verdict solely on the evidence.

As noted above, this Court finds no error in any individual ruling, therefore there could be no cumulative error. However, assuming error, the question is whether such errors were so significant in combination so as to constitute manifest injustice, requiring a new trial.

To be sure, the trial did not proceed as smoothly as either the Court or counsel would have liked, but there was no indictment of the ethics of Ms. Novey's counsel either before or outside the presence of the jury. A contributing factor in the trial irregularities was the disorganized,

unfocused presentation of Ms. Novey's case. As is apparent with regard to the testimony of several witnesses, the testimony was not what Ms. Novey expected. Her proffers and responses to objections were imprecise and often inaccurate, and with regard to relevance objections, she often was unable to identify the pertinent elements of her claims or correlate the evidence to the elements. To this extent, error has been invited.

Furthermore, every attempt was made to cure any error, by granting Ms. Novey additional time and argument. Although this trial, like all trials, was not perfect, there is no error which is so profound or cumulative so as to require a new trial.

**IT IS THEREFORE ORDERED** that the Motion to Amend Judgment or Grant New Trial **(#100)** is **DENIED**.

Dated this 10th day of March, 2008

**BY THE COURT:**

_Marcia S. Krieger_
_____
Marcia S. Krieger
United States District Judge
